STATE OF WEST VIRGINIA

*v.*

IDA MAE CROCKETT

(No. 13966)

Decided September 18, 1979.

*David Grabill, Bradley J. Pyles, Logan, Grant F. Cran-dall, Penelope Crandall, Crandall, Pyles & Crandall, Lee Adler, Cynthia L. Dettman,* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Leonard B. Knee*, Assistant Attorney General, for defendant in error.

CAPLAN, CHIEF JUSTICE:

The defendant, Ida Mae Crockett, was charged by an indictment returned in the Circuit Court of Kanawha County of the crime of robbery by violence. At trial upon said charge she was convicted by a jury and was sentenced to confinement in the West Virginia State Prison for Women for a term of twenty-one years. The defendant's motion to set aside the verdict having been denied, this appeal was prosecuted.

Based upon the cumulative effect of numerous errors, particularly the improper intervention and discriminatory conduct of the court, we find that the defendant was denied her constitutional right to a fair trial. We therefore reverse the judgment of the court and remand this case for a new trial.

Seventy-five year old Donald Hensley was attacked on December 25, 1975 while walking to a drug store for medication. He was shoved into the alcove of the Quality Shop, struck in the mouth, forced to the ground and was robbed of $8.00, a watch and an imitation diamond ring. Ida Mae Crockett, a young black woman, was one of three women indicted for this robbery by violence. Her basic defense was that the robbery occurred spontaneously and that she did nothing but stand by and observe. At trial, the defendant testified that she was walking about thirty feet behind her two companions, one white woman and one black woman, when she observed one of them grab the victim and push him into the alcove. Having been charged in the indictment as a principal in the first degree, the identity of the actual perpetrators of the offense was a crucial issue for jury determination. We note, however, certain instances during the trial proceedings in which the court's intervention prevented defense counsel from fully cross-examin-

ing two key state witnesses and from examining one defense witness on the issue of identity.

The State's first witness was the victim, Donald Hensley. The defendant contends on appeal that her defense counsel viewed the victim as a reluctant witness and attempted to establish this point in attacking Hensley's credibility relative to the identity of the defendant. This line of cross-examination, however, was cut off by the court upon objection by the prosecution.

The trial of this case was set for July 12, 1976. On that date the State moved for a continuance until July 14. No objection being made by the defendant, the court continued the trial. On July 14, the State moved the court to continue the trial until August 10, alleging that Donald Hensley was ill. Counsel for defendant objected and moved to dismiss the indictment. The court overruled the objection and motion and continued the trial until August 10. When the victim did not appear on the morning of August 10, defense counsel again moved that the case be dismissed. The court overruled the motion and continued the trial until that afternoon at which time the victim, after being contacted by a deputy sheriff, appeared and testified.

On direct examination, Hensley testified that he was not positive that the defendant was one of the women who robbed him. He thought he was grabbed by three blacks and was not sure initially whether those robbing him were men or women. He could only state that the defendant looked like one of the women who robbed him. On cross-examination he testified that he knew the date and time of the trial, but was sick in bed that morning and could not appear. When questioned as to whether he had called the prosecutor to tell him why he would not be at trial, the witness responded, "I did a while back." At that point, the prosecution objected and the court sustained the objection finding the question improper on cross-examination. The court apparently concluded out of the hearing of the jury that the absence of the wit-

ness was due to illness, and that defense counsel would not be permitted to make any implication to the jury that Hensley was a reluctant witness. This deprived the jury of its right and obligation to make an important determination of fact.

Defense counsel should have been permitted to continue the cross-examination on this point. The issue of the identity of the perpetrators of the offense was crucial. The reason for the victim's failure to appear for trial on two prior occasions could have gone to his credibility in testifying against the defendant, and would therefore have been proper evidence for the jury to consider. Although this ruling was not made in the presence of the jury, the court's interference and limitation of cross-examination at that time demonstrated an unwillingness by the court to allow the defendant to fully present a theory of defense.

The court again curtailed cross-examination of a key witness on the issue of identity when defense counsel was questioning State witness Manuel Pickus. Jean and Manuel Pickus were eye witnesses to the robbery. They were driving by the Quality Shop on the afternoon of December 25 when they noticed a scuffle in the alcove. They drove around the block and stopped in front of the Quality Shop to determine the nature of the incident. Both testified that one black woman was standing near the street looking up and down. This woman ran while Mr. Pickus attempted to apprehend the two women robbing Donald Hensley. Mr. Pickus was successful in detaining the white assailant, but the other black woman managed to get away.

On direct examination, Mr. Pickus identified the defendant as one of the women in the alcove robbing the victim. On cross-examination, defense counsel developed the fact that Mr. Pickus had given a statement pertaining to the robbery to the police on the afternoon of the incident. In that statement, he described the woman standing out front as:

"... The girl standing outside, gold wire rim glasses, black fluffy Afro hairdo, broad round face, wide bridge nose, brown coat."

At trial he described the woman standing out front as short and stocky, and stated that that was his only memory of her. Mr. Pickus further testified that the woman out front did not strike or rob the victim. Defense counsel again asked the witness to describe the person standing near the street. Upon objection by the prosecution, the court cut off this line of cross-examination.

On redirect examination, the prosecutor was permitted to ask:

"Q. There was some question asked you about a description that you gave of one of the females wearing gold wire rimmed glasses, black fluffy Afro, wide bridged nose, brown coat, but you said, did you not, that the girl standing outside had the gold wire rimmed glasses. You never intended that to be a description of this defendant, did you?

A. No, it was not.

Q. That was the description of the lookout?

A. The description of the lookout, yes."

On re-cross, defense counsel was not permitted to question the witness as to which of the three women was standing outside the alcove.

Again, defense counsel should have been permitted to pursue this line of examination. While the court's intervention in these instances may not amount to reversible error, the court should not have curtailed cross-examination of these key witnesses on the material issue of identity of the women involved in the offense. It is important to note, at this point, that in order for the State to have obtained a conviction under the indictment, the State was under an absolute obligation to have proved beyond a reasonable doubt that the defendant was an actual perpetrator of the crime charged. Otherwise, an

acquittal was obligatory. The defendant should have been afforded full leeway in developing the evidence on identity. She was not.

The defendant also notes the court's intervention in the direct examination of defense witness Robert Cyrus. Cyrus testfied that while on his way to the Holley Hotel on December 25, he saw a black female standing in front of the Quality Shop. He identified the defendant as the woman standing outside the alcove during the commotion. Defense counsel then asked:

> "Q. Would this be an accurate description of the person you saw standing out front. I am going to read to you from a statement given [by Manuel Pickus] December 25, 1975, to the Charleston Police Department.
>
> MR. BROWN: Objection, Your Honor.
>
> THE COURT: Mr. James, the Court is going to sustain the objection to that, you are testifying now.
>
> MR. JAMES: Exception . . ."

The witness then testified that the person standing out front had on wire-rimmed glasses, was black, had a fluffy Afro hairdo, had a broad round face, and a wide-bridged nose. Although this description of the defendant is consistent with the description of the woman standing on the sidewalk given to the police by Manuel Pickus immediately following the incident, the court's action in cutting off the examination possibly deflected the jury's attention from this point.

The defendant contends that the court's refusal to permit full cross-examination of the State's key witnesses and effective examination of the only defense witness on an issue which could be dispositive of the guilt or innocence of the accused, amounted to a denial of a fair and impartial trial. We agree.

A defendant on trial has the right to be accorded a full and fair opportunity to fully cross-examine the witness-

es. *State v. Pietranton,* 137 W.Va. 477, 72 S.E. 2d 617 (1952); *Willis v. Commonwealth,* 183 Va. 125, 31 S.E. 2d 306 (1944). Here, the State's witness, Mr. Pickus, identified the defendant as one of the women directly involved in the robbery. However, he could not describe with detail any of the women participating in the crime. The defense was apparently attempting to show that the description of the woman standing outside the alcove given to police by Mr. Pickus immediately following the incident was consistent with Robert Cyrus' description of the defendant. However, the court's intervention prevented defense counsel from fully pursuing this point and could have deflected the jury's attention from counsel's attempt to bear upon the credibility of the State's witness in identifying Ida Mae Crockett as a perpetrator of the offense. The issue of the identity of the accused participants in the robbery, and their particular involvement in the incident, if any, was crucial to the defendant's case. Again, the court should have permitted a full opportunity to cross-examine the State's witnesses and to effectively examine the defendant's witness on this issue.

Another instance of the court's improper invasion of the province of the jury occurred during the redirect examination of Manuel Pickus. Mr. Pickus gave the police a statement immediately after the incident in which he stated "the black female*s were* standing in the outer part of the lobby" (emphasis added). His trial testimony was that only one black woman stood out front. The defense counsel brought this inconsistency out on cross-examination. On redirect examination, the prosecution tried to rehabilitate the witness. At this point, the court intervened:

> "THE COURT: I am going to clear this up and save some time both for the witness and the jury; that is undoubtedly, I will ask the witness, that is undoubtedly a typographical error at the time you signed the statement you overlooked, is that correct?
>
> A. Yes, sir, it is."

The court again invaded the province of the jury as the findings of fact, and improperly commented on the evidence. "It is well-settled that a trial judge should not comment on the weight of evidence bearing upon any factual matters submitted to the jury for decision and that a violation of this general rule may constitute reversible error." *Ellison v. Wood & Bush Co.*, 153 W.Va. 506 at 512, 170 S.E. 2d 321 at 326 (1969). See *Steinbrecher v. Jones*, 151 W.Va. 462, 153 S.E. 2d 295 (1967); *State v. Loveless*, 140 W.Va. 875, 87 S.E. 2d 273 (1955); *State v. Perkins*, 130 W.Va. 708, 45 S.E. 2d 17 (1947); *State v. Austin*, 93 W.Va. 704, 117 S.E. 607 (1923). "In the trial of a criminal case the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner by word, tone, or demeanor, his opinion upon any fact in issue." Point 7, Syllabus, *State v. Austin*, 93 W.Va. 704, 117 S.E. 607 (1923), and *State v. Perkins*, 130 W.Va. 708, 45 S.E. 2d 17 (1947). See *McDonald v. Beneficial Standard Life Insurance Co.*, 235 S.E. 2d 367 (1977); *State v. Pietranton*, 137 W.Va. 477, 72 S.E. 2d 617 (1952), and *State v. Kerns*, 47 W.Va. 266, 34 S.E. 734 (1899).

An examination of the record lends substance to the defendant's assertion that the trial court erroneously precluded the mention of race by defense counsel at any stage of the trial. Colloquy between the court and counsel for the defendant, on many occasions during the trial, reveals an undue repression by the court of defense counsel's efforts to avert prejudice against his client on a racial basis. Although said counsel persisted in his insistence that his remarks were made in good faith, in aid of his client's case and not for the purpose of inflicting improper racial considerations, the court consistently disallowed such comments.

Ordinarily, the mention of race in the trial of a case may be irrelevant and immaterial as stated by the court below. However, where, as in this case, the defendant, her attorney and her only witness were black and the prosecutor, all prosecuting witnesses, the judge and the jury were white, the race of the defendant could be

urgently relevant. Also pertinent is the fact that the prosecutor mentioned race on several occasions without any remonstrance by the court.

In the circumstances of the instant case, race was clearly a factor which may have properly been considered. The trial court should have permitted certain comments relating to race, where relevant, and its adamant refusal to permit even a mention thereof was erroneous.

The defendant also urges that the sentence imposed, twenty-one years, is a further indication that the trial judge conducted her trial and passed judgment upon her in a discriminatory fashion. The record does not reveal any reasons for the sentence imposed upon the defendant. While such sentence is permissible under *W.Va. Code*, 1931, 61-2-12, as amended, (not less than ten years), we find it is harsh, in the circumstances of this case and that its imposition further reflects the trial court's discriminatory demeanor.

The defendant complains that there was a fatal variance between the charge in the indictment and the proof adduced at the trial. While we do not agree that there was such a variance, inasmuch as this case is being remanded for a new trial, we believe it advisable to comment on a certain instruction which was given by the court and a portion of the closing argument by the prosecuting attorney.

As noted, the assignment that there was a fatal variance between the charge in the indictment and the poof is not substantial. The indictment charged the defendant, together with her co-indictees, of robbery by violence, as a principal in the first degree. There was evidence offered at the trial that the defendant was a perpetrator of this robbery. There was also evidence that she did not participate in the actual act of robbery. It was then for the jury to determine whether she was guilty as charged in the indictment. Clearly, this case is distinguishable from *State v. Bennett*, _____ W.Va. _____, 203 S.E. 2d 699 (1974), upon which the defendant relies. In *Bennett* the defendant was indicted as a principal in

the first degree and was convicted on evidence which showed him to be only an aider and abettor, a principal in the second degree. There was a distinct variance between the charge in the indictment and the proof adduced at the trial. Not so in the instant case. Ida Mae Crockett was charged as a principal in the first degree and there was evidence that she participated in the crime as such principal.

Under the indictment in the instant case, the jury could have found the defendant guilty or not guilty of robbery by violence as a principal in the first degree; it could not have found her guilty of such crime as a principal in the second degree. Therefore, it was erroneous for the court to give State's Instruction No. 9 which informed the jury of the elements of the crime of principal in the second degree to robbery. Although it did not tell the jury that it could find the defendant guilty as a principal in the second degree, the implication was sufficient to cause confusion in a juror's mind.

The confusion was compounded by certain statements of the prosecutor during his closing argument to the jury. He said " ... the Court has instructed you on aiding and abetting, just in case you may feel that Ida Crockett wasn't the girl who was in the back bending over, touching Mr. Hensely ... " The prosecuting attorney thereby effectively told the jury that they could find the defendant guilty under the indictment even if they believed that she was only an aider and abettor. Of course, as herein noted, this is erroneous and should not have been permitted by the court. In fact, the jury should have been instructed that if they found the defendant was guilty as an aider and abettor, she must be acquitted of the crime charged in the indictment.

An examination of the record before us reveals, as herein noted, many occasions on which the court erred. While any one of such errors standing alone may not warrant a reversal, the cumulative effect of numerous errors effectively denied the defendant her right to a fair trial. The Court said in Point 5, Syllabus, *State v.*

*Smith,* 156 W.Va. 385, 193 S.E. 2d 550 (1972) and reiterated in Point 5, Syllabus, *State v. Harr,* 156 W.Va. 492, 194 S.E. 2d 652 (1973): "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." See also *State v. Myers,* ___ W.Va. ___, 222 S.E. 2d 300 (1976) and *State v. Wilson,* ___ W.Va. ___, 202 S.E. 2d 828 (1974).

In the instant case the court, on several occasions, improperly curtailed cross-examination by the defendant on the crucial issue of identity. As herein noted, it was essential to find that the defendant was an actual perpetrator of the crime of robbery by violence in order to find her guilty under the indictment. However, the defendant was never permitted by the court to freely pursue vital avenues relative to the identity of the actual perpetrator of the crime or that of the one who was acknowledged to have been standing on the sidewalk, apart from the said perpetrators.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is reversed, the verdict is set aside, and a new trial is awarded to the defendant.

*Reversed; verdict set aside; new trial awarded.*