541 S.E.2d 341

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Richard Lee GRAHAM, Defendant Below, Appellant.**

No. 27459.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2000.

Decided Nov. 8, 2000.

Concurring Opinion of Justice Starcher Jan. 5, 2001.

---

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Assistant Attorney General, Charleston, for the Appellee.

R. Thomas Czarnik, R. Thomas Czarnik & Associates, Princeton, for the Appellant.

MAYNARD, Chief Justice.

The defendant below, appellant, Richard Lee Graham, was charged with sexual abuse in the first degree of A.W.,[1] an eleven-year-old female, in violation of W.Va.Code § 61–8B–7 (1984).[2] Following a jury trial on December 10, 1998 in the Circuit Court of Mercer County, the defendant was found guilty. On appeal to this Court, he assigns several errors seeking reversal of his conviction. For the reasons that follow, we affirm.

## I.

### FACTS

A thumbnail sketch of the relevant facts is as follows. At trial, eleven-year-old A.W. testified that on March 27, 1998, she had disembarked the school bus and was walking the long drive way to her hilltop house when her neighbor, twenty-two-year-old Richard Lee Graham,[3] grabbed her from behind, pushed her against him, and rubbed her buttocks with his erect penis through their clothing. A.W. screamed, broke loose, and ran home. The defendant retreated toward his house at the bottom of the hill. The victim's mother, Yvette G., testified concerning the events following the incident including her daughter's fear of men as a result of the attack. The investigating officer, Detective Sergeant Darrell Bailey of the Mercer County Sheriff's Department, testified that the defendant was convicted of first degree sexual abuse for an incident in 1994 in which he fondled and kissed the breasts, and maybe the vaginal area, of another 11–year–old girl.[4]

The defendant offered the testimony of his younger brother and mother that he had been at home when the incident occurred. Several friends of the defendant's family corroborated this testimony or rebutted the victim's testimony concerning what the defendant was wearing on the day of the attack.

Upon his conviction for sexual abuse in the first degree, the defendant was sentenced to one to five years in the penitentiary. The sentence was suspended, and the defendant was placed on probation for a period of five years with the conditions that he serve ninety days in the Southern Regional Jail and, upon release from jail, be placed in a residential treatment center for the treatment of his "mental and sexual deviations and that he remain in such placement until it is determined that he can return to society."

1. Consistent with our practice in cases involving sensitive matters, we use the victim's initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

2. W.Va.Code § 61–8B–7 (1984) states in pertinent part that "[a] person is guilty of sexual abuse in the first degree when ... [s]uch person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less."

3. The defendant is mentally retarded and lives with his mother and siblings.

4. The defendant served time in the penitentiary for the 1995 conviction and was released on September 5, 1997.

## II.

### DISCUSSION

First, the defendant avers that the circuit court erred in precluding his cross-examination of Yvette G., the victim's mother, concerning domestic violence petitions she filed against her husband, the victim's stepfather, to rebut the inference that the victim was afraid of men because of the defendant's attack.[5] Specifically, the defendant sought to cross-examine the victim's mother concerning several instances from 1996 through 1998 in which her husband, Doug G., verbally and physically abused her and made threats against her and her children. The defendant argues, *inter alia*, that the preclusion of this evidence deprived him of his right to introduce rebuttal evidence and to challenge the credibility of the witness.

■■■ This Court has stated that "[a] defendant on trial has the right to be accorded a full and fair opportunity to fully examine and cross-examine the witnesses." Syllabus Point 1, *State v. Crockett*, 164 W.Va. 435, 265 S.E.2d 268 (1979). However, this right is not unbridled.

Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syllabus Point 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982).[6] We have opined that the trial court's decision to exclude or permit questions on cross-examination "is not

reviewable except in case of manifest abuse or injustice." Syllabus Point 4, in part, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956). With these standards to guide us, we now review the first issue raised by the defendant.

■■ On direct examination, Yvette G., A.W.'s mother, testified that since the incident with the defendant, A.W. is "terrified of men." Specifically, the victim avoids men when possible and she is withdrawn in their company. Yvette G. testified on cross-examination that she is now separated from A.W.'s stepfather, but prior to the separation A.W. was comfortable around her stepfather. At that point, defendant's counsel sought to question Yvette G. concerning domestic disputes between her and her estranged husband and was precluded from doing so by the trial court.

We find that the circuit court did not err in precluding this cross-examination. First, it seems clear that the victim's fear of men is collateral to the main issues surrounding the defendant's culpability. This evidence concerns the victim's response to the sexual abuse and is not a matter that directly weighs upon the guilt or innocence of the defendant. In other words, even if the defendant established that A.W. feared men prior to the incident of sexual abuse by the defendant, this would not have changed the defendant's guilt or innocence. Second, the domestic violence petitions filed by Yvette G. do not contradict her testimony on direct examination. The record reveals that on several instances in 1996 and 1998, A.W.'s stepfather allegedly verbally and physically abused A.W.'s mother, sometimes in front of A.W. and her siblings. From these petitions, however, it cannot be discerned whether the victim did or did not fear men as a result of her stepfather's alleged conduct. Also, nothing in these petitions directly refutes Yvette G.'s testimony on cross-examination that A.W. was comfortable around her stepfather

---

5. In July 1996 and July 1998, the victim's mother filed family violence petitions against her husband, Doug G., the victim's stepfather, in which she alleged verbal and physical abuse. At trial, the victim's mother testified that she is now separated from her husband and that divorce proceedings are pending.

6. In accord, Rule 611(b)(1) of the West Virginia Rules of Evidence states that the cross-examination of non-party witnesses "should be limited to the subject matter of the direct examination and matters affecting the credibility of the non-party witness."

when he lived with the family. Finally, the defendant was not completely precluded from questioning Yvette G. concerning A.W.'s relationship with her stepfather. Accordingly, we conclude that the circuit court's preclusion of the cross-examination of the victim's mother concerning domestic violence does not amount to manifest abuse or injustice.

■ As his second assignment of error, the defendant contends that the circuit court erred in allowing the prosecutor to argue in closing that A.W. is afraid of men because of the defendant's attack, after denying the defendant the opportunity to cross-examine Yvette G. concerning the domestic violence petitions.

■ In reviewing allegedly improper comments made by a prosecutor during closing argument, we are mindful that "[c]ounsel necessarily have great latitude in the argument of a case," *State v. Clifford*, 58 W.Va. 681, 687, 52 S.E. 864, 866 (1906) (citation omitted), and that "[u]ndue restriction should not be placed on a prosecuting attorney in his argument to the jury." *State v. Davis*, 139 W.Va. 645, 653, 81 S.E.2d 95, 101 (1954), *overruled, in part, on other grounds, State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). Accordingly, "[t]he discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syllabus Point 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

At the close of the trial, the prosecutor argued in support of the reliability of the victim's testimony and stated,

Why would an eleven year old make this up and how would she know how to act after something like this happened if she had made it up? ... How reliable is it that she did this for days. That she clung to her mother. She wouldn't go out on the porch. That she was afraid of men after that.

The defendant argues that this was unfairly prejudicial because the prosecutor remarked on the defendant's failure to challenge Yvette G.'s testimony concerning A.W.'s fear of men. According to the defendant, the prosecutor also unfairly stated that the only reason for A.W.'s fear of men is the defendant's sexual abuse of the victim.

■ "A prosecutor may argue all reasonable inferences from the evidence in the record." Syllabus Point 7, in part, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988). It is clear that the comments at issue constitute a reasonable inference from the evidence adduced from the testimony of Yvette G. Also, a prosecutor is not prohibited from commenting on the credibility of witnesses.[7] *See State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988). Finally, this Court has carefully read the prosecutor's closing argument and we find no references to the defendant's failure to challenge Yvette G.'s testimony concerning A.W.'s fear of men, nor do we find the statement that there could be no other reason for the victim's fear but the defendant's sexual abuse. Accordingly, we believe that the prosecutor's comments do not result in prejudice or manifest injustice to the defendant. We conclude, therefore, that the circuit court did not abuse its discretion in allowing the comments.

Next, the defendant complains that the circuit court erred in precluding the defendant from cross-examining Detective Bailey concerning his lack of investigation in order to show bias, presumption of guilt, and lack of any attempt to corroborate the victim's allegation.

A review of the trial transcript reveals that defense counsel questioned Detective Bailey at length concerning the manner in which he conducted his investigation including Detective Bailey's failure to examine the place where the sexual abuse occurred, the fact that he did not ask the victim to identify the defendant from a photo array, his failure to determine whether there were any other witnesses at the defendant's residence at the time of the offense, and his failure to ask the defendant's mother if she had been at the

---

7. It is improper, however, for a prosecutor to assert his personal opinion as to the credibility of

a witness. Syllabus Point 8, *State v. England, supra.*

house during the time period in which the sexual abuse occurred. In light of this, we find no merit to this assignment of error.

■ The fourth issue raised by the defendant is whether the circuit court improperly allowed evidence of the defendant's prior conviction. The record reveals that in a pre-trial conference order dated June 15, 1998, the circuit court set the trial date for September 9, 1998, and ordered the State to file requests, pre-trial motions, and notices by June 29, 1998. On August 26, 1998, the State filed its notice of intent,

> to use evidence of Defendant's prior conviction on January 6, 1995 in State of West Virginia v. Richard Graham, Case Number 94–F–172 and the circumstances attendant to that conviction, pursuant to Rule 404(b) ... to prove Defendant's lustful disposition to children, his motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of mistake or accident.

On August 27, 1998, the defendant filed an objection to the use of this evidence because of the untimeliness of the notice, the State's previous failure to notify the defendant of the use of the evidence in response to the defendant's motion for discovery and inspection, and the State's failure to state witnesses, facts, or evidence relative to this evidence. The trial was ultimately continued until December 10, 1998. On the morning of the trial, both sides argued the issue, and the circuit court admitted the evidence for the purpose of showing the defendant's lustful disposition.

This Court has stated:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W.Va. R.Evid. 404(b).

Syllabus Point 1, *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) [of the West Virginia Rules of Evidence] involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock,* 196 W.Va. 294, 310–311, 470 S.E.2d 613, 629–630 (1996) (footnote and citations omitted).

■ First, we address the timeliness of the State's disclosure of its intent to use the Rule 404(b) evidence.

When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

Syllabus Point 2, *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), *modified,* Syllabus Point 1, *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988).[8] The instant case does not concern non-disclosure but rather disclosure outside the original time frame mandated by the circuit court. Despite this untimeliness, the defendant still received notice of the State's intent to use the evidence approximately three months and fourteen days prior to trial. Further, the defendant fails to explain how he was prejudiced by the untimely disclosure of the evidence. Therefore, we conclude that the notice was sufficiently timely to prevent surprise and to give

---

**8.** "Although *Grimm* was written prior to the adoption of the West Virginia Rules of Criminal Procedure, the standard for determining whether failure to comply with court-ordered discovery is fatal remains the same as that which we an-

nounced in *Grimm." State v. Gary F.,* 189 W.Va. 523, 527 n. 4, 432 S.E.2d 793, 797 n. 4 (1993). "The modification [of *Grimm*] ... does not affect the substance of the standard; merely its form." *Id.*

the defendant the opportunity to prepare his defense.

Concerning the sufficiency of the notice, this Court has said:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syllabus Point 1, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). The text of the notice specifically contains the style, the date, and the case number of the defendant's prior conviction. It also states that the purpose of the evidence is, *inter alia*, to prove the defendant's lustful disposition toward children. This was sufficient to give the defendant notice of both the nature and the purpose of the Rule 404(b) evidence.

As for the admission of the evidence, it is clear that there is sufficient evidence to show the other acts occurred. Also, we believe the trial court correctly found the evidence admissible for a legitimate purpose. In Syllabus Point 2 of *State v. Edward Charles L., supra*, we stated:

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin*, [176] W.Va. [688], 347 S.E.2d 208 (1986), it is overruled.

Finally, we find that the circuit court did not abuse its discretion in concluding that the other acts evidence is more probative than prejudicial under Rule 403.

Next, the defendant claims that the record does not reflect that a proper limiting instruction was given concerning the admission of the Rule 404(b) evidence.[9] We disagree. The trial transcript shows that the circuit court gave the following instruction when the Rule 404(b) evidence was admitted.

I'm going to give you what is called precautionary instructions that tell you how to treat the evidence you've just received. The Court instructs the jury that it has heard evidence that the Defendant was previously convicted of sexual abuse in the 1st degree against an 11 year old girl under somewhat similar circumstances. Such evidence of a collateral crime is not to be considered as proof of the Defendant's guilt on the present part but may be considered in deciding whether the Defendant had a (unclear) disposition for children and that his actions were intentional and were done (unclear).

In the jury charge contained in the record, the above instruction is recorded in its entirety. In place of the first "unclear" is the phrase "lustful disposition toward children." The second "unclear" is replaced with the phrase, "for his sexual gratification." Superimposed on this typed instruction is the trial judge's handwriting which states that the instruction was "[r]ead to Jury at 1:28 p.m. on 12/10/98 in trial of State v. Richard Graham 98–FE 121 1C." This notation is followed by the trial judge's signature. We conclude from this that the circuit court gave an adequate limiting instruction.

Last, the defendant asserts that the trial transcript is so incomplete as to deny him a record for his appeal. Specifically, the defendant complains of the numerous times in which the trial transcript contains the word "unclear" in place of what was actually said at trial. The State agrees that the transcript contains a disturbing number of

---

9. The defendant's brief is inconsistent on this point. On the previous page the defendant states

that "[c]ounsel believes the Court probably did give an adequate instruction."

unclear passages,[10] but avers that there is no identifiable error or prejudice shown by the defendant requiring reversal of his conviction. We agree.

 Although we have not specifically addressed this issue, other courts have held that "omissions from a trial transcript only warrant a new trial if 'the missing portion of the transcript specifically prejudices [a defendant's] appeal.'" *U.S. v. Brown*, 202 F.3d 691, 696 (4th Cir.2000), *quoting United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985); *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir.1999), *cert. denied*, 529 U.S. 1112, 120 S.Ct. 1968, 146 L.Ed.2d 799 (2000). *See also State v. Clark*, 644 So.2d 1130, 1131 (La.App. 4 Cir.1994), *writ denied*, 651 So.2d 287 (La.1995) ("a defendant is not necessarily entitled to have his conviction reversed just because there is no trial transcript available for review .... [but] where a defendant's right of review was prejudiced ... the defendant was given relief"). This is in accord with our own law. In *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987), the defendant claimed that his due process rights were violated because more than two years elapsed before his transcript was supplied to him so that he could complete his appeal. This Court disagreed, explaining that "we have allowed him his appeal, and he has shown no prejudice by the delay of two years." *Mayle*, 178 W.Va. at 30, 357 S.E.2d at 223. Despite the regrettable number of unclear passages, we believe that the transcript in no way prejudices the defendant's right to a meaningful appeal. This Court had no difficulty in assessing the defendant's alleged errors in light of the record.

### III.

### CONCLUSION

For the foregoing reasons, we find no merit in the assignments of error raised by the defendant. Accordingly, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

Justice STARCHER concurs and files a concurring opinion.

STARCHER, Justice, concurring.

(Filed Jan. 5, 2001)

I concur because the evidence is strong that this defendant has serious physical and psychological problems and needs care and intensive treatment—both to protect society, and to protect the defendant. The circuit judge's commendable creative sentence is a serious and appropriate step in this direction, and I simply would not tamper with that sentence.

However, in considering the trial that led to the defendant's appropriate sentence, I write separately to note my continuing dismay at the erosion of the integrity of our criminal processes, an erosion that the majority blindly approves.

In a criminal trial, evidence of "prior bad acts" is usually so unfairly prejudicial that we don't let it go before the jury, unless there's a special reason for its admission under *W.Va. Rule of Evidence* 404(b)—for example, to show plan or motive, etc. As I stated in my dissent in *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000):

> Where a defendant *admits* touching a child on their sexual areas, but *denies* that the touching was for a sexual purpose, other instances of clearly non-accidental sexual touching might be admissible under 404(b)—to show the defendant's actual plan or motive. That appears to be the case in the *Yager* case cited by the majority, where the court held that such evidence was admissible "to establish that it was no accident that [the defendant] touched the victim's penis." But in the instant case, the defendant *denied* all touching, so his motive was not a separate issue. Under these circumstances "other crimes" evidence should not be admissible under 404(b).

\*　　\*　　\*　　\*　　\*　　\*

One could write a dissertation on how Rule 404(b), *McGinnis* [193 W.Va. 147, 455 S.E.2d 516 (1994)], and now *Edward Charles L.* [183 W.Va. 641, 398 S.E.2d 123 (1990)] have become a "runaway train" in

---

**10.** According to the State's brief, the 105 page trial transcript contains 123 unclear passages.

some of our courts, when judges are tempted to abandon their proper gatekeeper role by over-zealous prosecutors. We have moved far away from the original purpose for permitting such evidence. The standard now seems to be: Will it help the prosecutor?

In most cases, as soon as a jury hears about a defendant's prior sex offense, a defendant is dead meat. Why even have a trial? I await the day when this Court can stop this runaway train. We can and will apply common sense to this currently confused area of law. When that happens, criminal trials in sex offense cases will be conducted fairly and in accord with the rules of evidence.