672 S.E.2d 333

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Melvin Randall MESSER, Defendant Below, Appellant.**

**No. 33870.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2008.

Decided Dec. 10, 2008.

---

Robert B. Kuenzel, Avis, Witten & Wandling, L.C., Logan, Counsel for the Appellant.

C. Michael Sparks, Mingo County Prosecuting Attorney's Office, Williamson, Counsel for the Appellee.

PER CURIAM:[1]

This is an appeal by Melvin Randall Messer (hereinafter "Appellant") from an order of the Circuit Court of Mingo County denying the Appellant a new trial subsequent to a jury verdict finding the Appellant guilty of two counts of first-degree murder with recommendations of mercy. The Appellant was sentenced to two consecutive life sentences and was assessed fines, costs, and restitution of $6,038.33. On appeal to this Court, the Appellant asserts that he was denied due process of law by the prosecutor's repeated misstatements of facts not in evidence during closing argument; by the inconsistent factual positions taken by the State in the Appellant's prosecution and the indictment of another individual involved in the underlying events; and by the State's failure to present exculpatory evidence to the grand jury.

The Appellant further contends that the evidence does not support a conviction for first-degree murder; that the trial court erred in failing to suppress the Appellant's statement; and that the trial court erred in reading names of prospective witnesses to the jury. Upon thorough review of the arguments of counsel, the briefs of the parties, the record, and applicable precedent, this Court affirms the Appellant's conviction.

I. Factual and Procedural History

On January 7, 2006, the Appellant, Tommy Banig, and Walter Gauze were allegedly involved as perpetrators of a burglary. The Appellant had thereafter planned to testify against Gauze with regard to Gauze's participation in the burglary. In retaliation, Gauze had allegedly threatened to murder the Appellant and had allegedly shot at the Appellant's place of residence.[2]

On Friday, March 31, 2006, the Appellant and Banig visited to the residence of Robert Brewer to discuss the potential sale of a .22 rifle and a black .45 hi-point handgun to Brewer. During the conversation regarding a potential sale, the evidence at trial revealed that either the Appellant or Banig had asked to retain possession of the gun through the weekend.

On Monday, April 3, 2006, the Appellant was visiting the residence of Banig and his family in a trailer at Marrowbone, Mingo County, West Virginia. Gauze and Christopher "Buck" Chapman entered the Banig residence[3] and proceeded down a small, narrow hallway directly to the right of the entrance door. The Appellant claims that Banig had a gun at the residence and that Chapman had also brought a gun. The Appellant further claims that he was in the bathroom, unarmed, as a fight over the guns ensued.[4] The Appellant admits that he exit-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. In his Motion for Judgment of Acquittal, the Appellant indicates that it was "undisputed" that a van owned by Gauze's friend, Christopher "Buck" Chapman, drove by the residence in which the Appellant was residing, and gunshots were allegedly fired at the residence.

3. Sonya Belt, Jamie Domosley, and Josh Mollette accompanied Gauze and Chapman to the Banig residence.

4. The Appellant's Statement indicates as follows: Anyways, I was at Tommy's house tonight. I saw them pull up. I went back to use the bathroom. Tommy was in the bedroom, in bed with his wife. I told Tommy that Walter and "Buck" was here. Then I went and used the bathroom. When I came out of the bathroom, I heard them fighting in the hallway, so I didn't get to use the bathroom. I came out. They were fighting over the guns. "Buck" had a pistol in his hand. Tommy had a .22 rifle and they were trying to take it away. While they were fighting the pistol was going off. I

ed the bathroom, participated in the altercation, and eventually gained possession of the pistol, shooting and killing Gauze and Chapman. He contends, however, that the shootings resulted from self-defense and the defense of others.

Other evidence introduced by the State at trial, however, indicates that the decedents were unarmed when they entered the residence, that the only gun in the possession of Banig would not fire, and that the Appellant fired the .45 pistol immediately upon exiting the bathroom. The Appellant's contention that he engaged in a fight to gain control of the weapon was refuted by the medical examiner's testimony that there were no physical indications of a struggle. The Appellant's testimony was also refuted by the testimony of witnesses who indicated that the shots were fired more immediately than the Appellant's statement would suggest.

A jury verdict finding the Appellant guilty of two counts of first-degree murder was rendered on January 11, 2007. Although the Appellant did not testify at the trial, his statement was presented to the jury. Banig did not testify. The Appellant's motion for a new trial was denied.

## II. Standard of Review

■ In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court explained as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Similarly, in syllabus point three of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000), this Court explained as follows:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error

under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Utilizing those standards of review as guidance, this Court addresses the matters asserted by the Appellant.

## III. Discussion

### A. Alleged Misstatements of Prosecuting Attorney

■ The Appellant contends that his due process rights were violated by the prosecuting attorney's repeated references, during closing argument, to the Appellant's possession of a gun as he exited the bathroom. The State's theory of the case was that the Appellant had possession of the .45 hi-point pistol in the bathroom and immediately started shooting as he exited the bathroom, shooting Chapman in the left back and Gauze twice in the right upper torso. Chapman was shot again in the right ear lobe, and both Chapman and Gauze were pronounced dead at the scene. The medical examiner found no evidence of defense or confrontational wounds on the bodies of either Chapman or Gauze, and the State presented evidence indicating that neither decedent was armed at the time of the shootings. With regard to the .22 rifle, Banig admits that he had possession of it during the altercation and that it jammed. He claims to have hit Chapman and Gauze with the gun, but further alleges that it would not shoot.[5]

The Appellant contends that the prosecuting attorney misstated facts by making certain comments during closing argument. For instance, the prosecutor explained to the jury that "[t]his was an ambush, folks. Messer comes out, simply starts shooting." The prosecutor also stated that the Appellant "said he went to the bathroom. Well, he said he didn't use the bathroom and he took a 45

---

jumped in and started fighting with them. I ended up with the pistol. They were still trying to get the rifle. After I got the pistol, I shot him in the chest and then I shot him, "Buck," again. Then I shot Walter.

5. The .22 rifle disappeared from the crime scene, and Banig speculated in his statement that it might have been thrown into a well by someone who came into the trailer after the participants had departed.

high caliber black high point to ...." [6] "Now unless there was a wildcat back there, I typically don't take a high point black 45 back to the bathroom to do my business." The Appellant contends that because his statement, indicating that he did not have a gun in his possession in the bathroom, was uncontroverted, the prosecutor should not have been permitted to make such comments to the jury during closing argument.

In response to the Appellant's claim that the prosecutor misstated evidence, the State maintains that the prosecutor was simply drawing all permissible inferences from the evidence. Indeed, the Appellant's statement was uncontroverted only to the extent that there was no direct testimony indicating that he had a pistol in his possession while in the bathroom. However, extensive testimony was presented indicating that shots [7] were fired within seconds of Chapman and Gauze entering the trailer; that they did not have weapons upon entering the trailer; that Banig had possession of a rifle that would not fire; and that there was no evidence of a physical altercation such as that described by the Appellant.[8]

Syllabus point seven of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), provides that "[a] prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." This Court also explained in *State v. Asbury*, 187 W.Va. 87, 415 S.E.2d 891 (1992), that "[a] prosecutor is allowed to argue all reasonable inferences from the facts." 187 W.Va. at 92, 415 S.E.2d at 896.

In *State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000), this Court addressed the principles utilized to evaluate prosecutorial comments and explained as follows:

In reviewing allegedly improper comments made by a prosecutor during closing argument, we are mindful that "[c]ounsel necessarily have great latitude in the argument of a case," *State v. Clifford*, 58 W.Va. 681, 687, 52 S.E. 864, 866 (1906) (citation omitted), and that "[u]ndue restriction should not be placed on a prosecuting attorney in his argument to the jury." *State v. Davis*, 139 W.Va. 645, 653, 81 S.E.2d 95, 101 (1954), *overruled, in part, on other grounds, State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). Accordingly, "[t]he discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syllabus Point 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

208 W.Va. at 468, 541 S.E.2d at 346; *see also State ex rel. Edgell v. Painter*, 206 W.Va. 168, 522 S.E.2d 636 (1999) (holding that prosecutor is allowed to argue all reasonable inferences from facts presented at trial); *State v. Smith*, 190 W.Va. 374, 438 S.E.2d 554 (1993) (holding that prosecutor may argue all reasonable inferences from evidence in record).

In *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), this Court reiterated the wide latitude to which prosecutorial arguments are entitled, explaining as follows: "Clearly, a prosecuting attorney should refrain from referring to questionable evidence that may poison the jury's mind against the defendant. However, there is equally clear authority that a prosecuting attorney's suggestion of a plausible inference to be drawn from the evidence is proper." 193 W.Va. at 405, 456 S.E.2d at 486.

In the case sub judice, the prosecutor's remarks to the jury were indicative of

---

**6.** The prosecutor was interrupted by an objection by defense counsel during that particular remark.

**7.** Phillip Kent Cochran, a firearm examiner from the West Virginia State Police Forensic Laboratory, confirmed that the decedents were killed by bullets fired from the black .45 hi-point handgun.

**8.** Dr. Iouri George Boiko, M.D., Ph.D., of the West Virginia Office of Chief Medical Examiner, performed the post-mortem examinations of Chapman and Gauze, finding no evidence of confrontational wounds on either body.

the theory of the case espoused by the State and supported by the circumstantial, if not direct, evidence presented at trial. The prosecutor's statements to the jury constituted a reasonable interpretation of the facts.[9] The testimony supported the prosecutor's inferences based upon the timing of the shots fired, the fact that the decedents were unarmed upon entering the trailer, and the absence of any confrontational wounds on the decedents' bodies. Accordingly, we find no abuse of discretion by the trial court in refusing to grant a new trial on the basis of the prosecutor's remarks to which the Appellant objected.[10]

### B. Inconsistent Factual Positions Taken in Banig's Indictment

■ The Appellant contends that his due process rights were also violated subsequent to the Appellant's trial. In the separate indictment of Banig upon gun charges not specifically related to the night of the decedents' deaths, the prosecutor informed the grand jury that Banig had exercised control of the pistol when the Appellant and Banig presented the weapons to Brewer for potential sale. The Appellant's trial concluded on January 11, 2007. The Banig grand jury heard evidence on January 18, 2007. During that proceeding, Sheriff Lonnie Hannah, also the investigator in the Appellant's case, testified that the Appellant and Banig had visited the home of Robert Brewer to discuss a sale of guns. Sheriff Hannah explained to the Banig grand jury that "they sold him a 22 rifle and they had a 45 pistol, automatic pistol, also, that they did not sell him that was later on, we found, was used in the commission of a crime." Sheriff Hannah in-

dicated that Banig had possession of the firearms.

The Appellant contends that statements to the Banig grand jury are inconsistent with the testimony at the Appellant's trial with regard to the possession of the murder weapon. In response to the Appellant's concerns, the trial court reviewed the Banig grand jury transcript and made that transcript a part of the record in this case for appellate review.

The Appellant contends that the State violated a fundamental principle prohibiting the utilization of inconsistent theories in separate trials of defendants. Indeed, as the Appellant emphasizes, *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir.1997), *vacated on other grounds*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), does stand for the proposition that a "prosecutor's pursuit of fundamentally inconsistent theories" in separate trials of defendants charged with the same murder violated due process. 120 F.3d at 1056. We find the Appellant's argument to be without merit, however, because the critical issue in the *Thompson* analysis is the fact that the defendants were charged with the same murder. In the present case, Banig was charged with a separate violation, a firearm possession in violation of West Virginia Code § 61-7-7(b)(1) (2004) (Repl.Vol.2005).[11] The two crimes by two different defendants were committed on separate dates, with different elements, and entirely distinct theories of prosecution. The presentation to which the Appellant objects in Banig's indictment process did not even occur until after the Appellant's trial. No unfair advantage was gained by the State against the Appellant, and we can discern no prejudice suffered by the Appellant due to the manner in

**9.** This Court concluded as follows with regard to the prosecutor's remarks in *Sugg:* "We find the inference that the cash in the defendant's possession was the result of a robbery was plausible from the evidence and the argument, therefore, was proper." 193 W.Va. at 405, 456 S.E.2d at 486.

**10.** As this Court emphasized in *Sugg*, even a prosecutorial argument unsupported by evidence would not necessarily result in a reversal. 193 W.Va. at 405, 456 S.E.2d at 486. "A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the

accused or result in manifest injustice." *Id.* at 393, 456 S.E.2d at 474, syl. pt. 5; *see also State v. Petrice*, 183 W.Va. 695, 398 S.E.2d 521 (1990) (holding that prosecutor's inappropriate comments were not sufficient alone to justify verdict reversal).

**11.** The Appellant indicates that Banig admitted that he was a felon in possession of a firearm when he took the .45 high point pistol to the residence of Robert Brewer in an attempt to sell guns. Banig apparently ultimately pleaded guilty to that charge.

which Banig's indictment was later presented.

## C. Failure to Present Exculpatory Evidence to Grand Jury

 The Appellant claims a due process violation in the failure of the prosecution to present exculpatory evidence to the grand jury. The Appellant contends that the State failed to read his statement to the grand jury. The prosecuting attorney informed the grand jury only of Banig's statement that the Appellant "possibly came out of the bathroom with the gun. . . ." The Appellant maintains that the grand jury may have indicted him for a lesser charge if it had been informed of the entire contents of his own personal statement.

In response to the Appellant's assertions, the State maintains that it has no duty to present exculpatory evidence to a grand jury. The traditional function of a grand jury is to determine whether there is sufficient probable cause to require a defendant to stand trial, rather than to engage in an analysis of the truth of the charges. In *State ex rel. Pinson v. Maynard,* 181 W.Va. 662, 383 S.E.2d 844 (1989), this Court recognized that "[c]riminal defendants have frequently sought to challenge the validity of grand jury indictments on the ground that they are not supported by adequate or competent evidence." 181 W.Va. at 665, 383 S.E.2d at 847. "This contention, however, often runs counter to the function of the grand jury, which is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial." *Id.,* 383 S.E.2d at 847.

The United States Supreme Court declined to impose a duty upon prosecutors to disclose exculpatory evidence in *United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), finding that a rule requiring prosecutors to present exculpatory evidence in addition to incriminating evidence "would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." 504 U.S. at 51, 112 S.Ct. 1735. Likewise, in *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996), this Court, citing *Williams,* found no merit to a defen-

dant's contention that the grand jury was not provided with exculpatory evidence. 197 W.Va. at 596 n. 5, 476 S.E.2d at 543 n. 5.

The State explains that although the Appellant's statement was not read verbatim to the grand jury, it cannot be accused of concealing all favorable evidence during the grand jury proceedings since it did present some exculpatory evidence. The grand jury was informed that the Appellant had provided a statement in which he asserted that he took the gun from Chapman and shot the decedents. Moreover, the grand jury was informed that Banig had originally stated that Chapman had brought the gun to the trailer but that Banig had later altered his statement to assert that the Appellant had the weapon prior to the arrival of Chapman and Gauze. The grand jury was further informed that Banig's wife, Melissa, thought she may have seen a knife in Gauze's hand at some point. Further, the grand jury was informed that Jamie Domosley initially stated that Banig had a gun in the hallway.

Thus, while the prosecution may have exercised some degree of discretion in determining the extent of exculpatory evidence to be presented to the grand jury, the failure to read the Appellant's statement in its entirety does not suggest an intention to conceal exculpatory evidence, gain any unfair advantage, or selectively present evidence to mislead the grand jury. Based upon the foregoing, this Court finds no merit to the Appellant's contention regarding any inadequacy in the presentation of evidence to the grand jury.

## D. Sufficiency of Evidence Supporting First Degree Murder

 The Appellant also asserts that the evidence at trial did not support a conviction for first-degree murder. He maintains that he was simply the victim of an unprovoked attack and that he fired the weapon only in self-defense. This Court has consistently recognized the extensive obligation of a criminal defendant in challenging the evidence supporting a conviction. Syllabus point three of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), addresses the

burden faced by a defendant in such a challenge, as follows.

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus point one of *Guthrie* explains the function of an appellate court in evaluating the evidence, as follows:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

The evaluation of a sufficiency of evidence argument on appeal was also discussed in syllabus point two of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), as follows:

When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prose-

cution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

■ The undisputed evidence presented in the case sub judice indicated that the Appellant shot and killed Chapman and Gauze. In testimony describing the circumstances under which such murders occurred, the State presented evidence that the Appellant and Banig advised Brewer, during negotiations regarding a sale of guns prior to the murders, that they intended to keep the pistol for the weekend and that they may need to use it. The State also presented evidence that Chapman and Gauze were unarmed as they entered the trailer, that there were no confrontational wounds on the bodies, and that the shots were fired almost immediately after Chapman and Gauze entered the hallway of the trailer. Testimony established that Chapman and Gauze had arrived at the trailer with beer, intending to party and drink. The State also presented evidence indicating that Chapman was shot execution-style in the head after sustaining a fatal shot in the back.

In light of the evidence in the record regarding the facts of this case, we conclude that abundant evidence existed to sustain the Appellant's conviction for first-degree murder under the sufficiency of the evidence test enunciated in syllabus point one of *Guthrie*. This Court has reviewed all the evidence in a light most favorable to the State, as directed by this Court in *Guthrie*. The record contains sufficient evidence, both direct and circumstantial, to convince a reasonable person of the Appellant's guilt beyond a reasonable doubt. We consequently find no merit to the Appellant's contention of insufficiency of evidence.

### E. Suppression of the Appellant's Statement

■ The Appellant also contends that his statement should have been suppressed based upon what he characterizes as insufficient explanation, prior to the waiver of his

*Miranda* [12] rights, regarding the magnitude of the crime with which he was subsequently charged. The Appellant maintains that although he waived his *Miranda* rights and executed the *Miranda* rights form, he was not clearly advised of the reason for his questioning. He also asserts that the *Miranda* rights form was devoid of any explanation of the possible criminal charges and penalties.

The Appellant directs this Court's attention to language included in a footnote in *State v. Goff* 169 W.Va. 778, 289 S.E.2d 473 (1982), a case in which this Court addressed the assertion that an intellectually challenged defendant was not properly informed of the charges against him. In *Goff,* the defendant's prior activity as a police informant created the concern that he may have misinterpreted his role, believing that he was being asked to assist in solving a crime, rather than realizing that he was actually a suspect under investigation. The Court ultimately ruled that the confession was involuntary, under the totality of the circumstances. In discussing the quantum of information to be provided to a defendant prior to a waiver of *Miranda* rights, the *Goff* Court opined as follows in footnote eight: "We believe that some information should be given to the defendant as to the nature of the charge in order that he can determine whether to intelligently and voluntarily exercise or waive his Miranda rights." 169 W.Va. at 785, 289 S.E.2d at 477.

The State responds to the Appellant's assertions by emphasizing that the record clearly demonstrates that the Appellant was provided with his *Miranda* rights and that he waived those rights by reviewing, initial-

ing, and signing an "Interview and *Miranda* Rights Form." The Appellant does not assert that he suffered from any disability which would have affected his understanding of those rights. [13] Further, the present case is distinguishable from *Goff* in several respects. The Appellant herein does not assert any intellectual incapacity. Trooper First Class Scarbro testified that the Appellant was clearly advised of his *Miranda* rights before he was questioned. Because he was not yet under arrest, he could obviously not be advised that any particular charges were pending against him. Moreover, Trooper Scarbro testified that the Appellant was free to leave at any time.

With regard to the Appellant's assertion that he was not fully aware of the reason for his questioning, this case is analogous to *State v. Moore,* 193 W.Va. 642, 457 S.E.2d 801 (1995). In that case, Moore also asserted that his confession was not voluntary because he had not been informed of the charges against him. This Court found such argument disingenuous, explaining that "[a]lthough it appears that the police did not expressly tell Mr. Moore the nature of the charges against him, under the circumstances there could be no confusion about what Mr. Moore was being charged with." 193 W.Va. at 648, 457 S.E.2d at 807. The same could be deduced in the present case. The Appellant was involved in an incident in which two people were fatally wounded. The gravity of the situation would not have been difficult to comprehend.

 When the Appellant presented this issue of suppression of the statement to the trial court, it denied the motion to suppress, reasoning [14] that the Appellant's state-

---

12. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13. In *State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720 (1982), this Court addressed the issue of a defendant's inability to understand the *Miranda* warnings due to intellectual limitations and explained that "[i]t is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary." 170 W.Va. at 53, 289 S.E.2d at 727. The *Adkins* Court examined a situation under which a person lacks the capacity to understand the meaning

of his statement. This Court concluded that "where the defendant's lower than normal intelligence is not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession." *Id.* at 54, 289 S.E.2d at 727.

14. During discussion of the motion to suppress, the necessity of the *Miranda* warnings was questioned since the Appellant was arguably not in custody at the time the statement was provided.

ment should not be suppressed based upon the interviewing officer's failure to inform the Appellant that he could become a suspect in the murder investigation or that he would be subject to a certain penalty if convicted. This Court has consistently held that considerable deference is to be provided to the trial court's decision regarding the voluntariness of a confession. In syllabus point four of *Moore*, this Court explained that " '[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' Syl. Pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978)." Further, the totality of the circumstances must be assessed in a determination of the voluntariness of a confession. *State v. Farley*, 192 W.Va. 247, 253, 452 S.E.2d 50, 57 (1994).

Based upon our review of this issue, we find no merit to the Appellant's claims that his statement should have been suppressed based upon the lack of information regarding the magnitude of the crime ultimately charged. We determine that the evidence in the record amply supports the trial court's ruling on this issue.

### F. Recitation of List of Prospective Witnesses

The Appellant claims that his due process rights were violated by the trial court's decision to permit defense counsel and the prosecutor to recite a list of prospective witnesses to the jury during voir dire.

The Appellant asserts that trial strategy later changed and some of those witnesses were not called, possibly causing the jury to wonder why those witnesses had not appeared as witnesses at trial. The Appellant suggests that a more reasonable alternative would be to present the potential witness names to the court collectively, rather than permitting each attorney to read a list of names. In that manner, the jury would be prohibited from knowing which side planned to call a specific witness.

The Appellant did not, however, object to the recitation of the list of names in the court below. Prior to the reading of the names, the trial court explained to the jury that it was "now going to call upon the lawyers to identify their potential witnesses by name and by address." The trial court also informed the jury that "the Defendant has no obligation to put on any witnesses and all these witnesses are potential witnesses only but we want to make sure no one is related...." The Appellant did not object[15] to the trial court's chosen method of reading the list to the jury, and this issue does not warrant application of the plain error rule. *See State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (reserving plain error analysis for errors of great magnitude). The Appellant has not identified any specific prejudice which resulted from the manner in which the list of potential witnesses was read. We find that the Appellant's conjecture concerning

---

It was observed, however, that the warnings had been provided by the officer out of abundance of caution.

**15.** This Court has consistently held that "silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial." *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). This raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989). In *LaRock*, this Court explained as follows:

Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights....

When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. There is also an equally salutary justification for the raise or waive rule: It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result). In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

196 W.Va. at 316, 470 S.E.2d at 635.

the jury's speculation does not form the basis for a meritorious claim on appeal, and we find no reversible error by the trial court in the manner in which the potential witness list was presented to the jury.

IV. Conclusion

Based on the foregoing, we find no reversible error in the case before us. Accordingly, we affirm the jury conviction and sentence the Appellant received in the Circuit Court of Mingo County.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.