# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2013 Term

_____

No. 11-1504

_____

**FILED**

**April 11, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

v.

**JACK JONES,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Ohio County**
**The Honorable James P. Mazzone, Judge**
**Criminal Case No. 08-F-13**

**AFFIRMED**

_____

**Submitted March 26, 2013**
**Filed: April 11 , 2013**

Stephen D. Herndon, Esq.                          Patrick Morrisey, Esq.
Herndon Law Offices                               Attorney General
Wheeling, West Virginia                           Scott E. Johnson, Esq.
Brent A. Clyburn, Esq.                            Senior Assistant Attorney General
The Law Office of Brent A. Clyburn               Charleston, West Virginia
Wheeling, West Virginia                           Counsel for the Respondent
Counsel for the Petitioner

The Opinion of the Court was delivered PER CURIAM.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

2. "A determination of the probable falsity of other statements of being the victim of sexual misconduct made by an alleged victim of a sexual offense is not a determination of the admissibility of evidence regarding the statements, nor is it a determination that cross-examination on the other statements must be permitted. A falsity determination means only that evidence regarding the other statements is not to be considered as evidence of an alleged victim's 'sexual conduct' within the meaning of our rape shield law, *W.Va. Code*, 61-8B-11 [1986] and *West Virginia Rule of Evidence* 404(a)(3) [1994]. The evidence remains subject to all other applicable evidentiary requirements and considerations. Moreover, in the event that an ultimate determination is made that such evidence is admissible, the State retains the right to seek to rebut or impeach such evidence before the ultimate trier of fact." Syl. pt. 5, *State v. Quinn*, 200 W.Va. 432, 490 S.E.2d 34 (1997).

3. "The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the

defendant's right to present relevant evidence supportive of his or her defense.  Under the test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion."  Syl. pt. 6, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999).

4.  "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case."  Syl. pt. 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

5.  "Ordinarily, where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error."  Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966).

6.  "The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom."  Syl. pt. 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

**Per Curiam**:

This case is before this Court upon the appeal of Jack Jones from his convictions in the Circuit Court of Ohio County of six counts of sexual assault in the first degree, seven counts of sexual abuse by a custodian or parent and one count of conspiracy. All of the convictions represented acts of sexual misconduct perpetrated by Jones against a child, R.M.[1] According to the evidence of the State, Jessica M., the mother of R.M., participated with Jones in some of the acts of sexual misconduct against R.M. Jessica M.'s criminal convictions concerning R.M. were affirmed by this Court in *State v. Jessica Jane M.*, 226 W.Va. 242, 700 S.E.2d 302 (2010).

Following trial by jury in 2009, the circuit court entered an order denying Jones's post-trial motions and sentencing him to an aggregate penitentiary term of 161 to 355 years. The circuit court reimposed that sentence by order entered on September 30, 2011.

Asking for a new trial, Jones sets forth several assignments of error, among which is his contention that his confrontation and due process rights were violated because he was not permitted to let the jury know that the complaining witness, R.M., had made various statements that sexual misconduct had been perpetrated against her by individuals other than Jones. Jones asserts that evidence of R.M.'s statements implicating others should have been admitted at trial as an exception to this State's rape shield statute, *W.Va. Code*, 61-8B-11 [1986].

---

[1] In view of the sensitive nature of this case, this Court will refer to certain individuals by their initials or first name and last initial. *Clifford K. v. Paul S.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005).

In reviewing Jones's assignments of error, this Court has carefully examined the appendix-record and the briefs and argument of the parties. For the reasons stated herein, we find the assignments of error to be without merit. Accordingly, this Court affirms Jones's convictions as well as his penitentiary sentence reflected in the September 30, 2011, order.

## I. Factual Background

R.M., born in December 1998, is the biological daughter of Jessica M. The biological father has been absent from this State for some time and is not involved in this case. In 2001, Jessica M. began a relationship with the petitioner, Jack Jones, an adult male born in 1970. Jones lived at Jessica M.'s residence in the Wheeling area from time to time and is the putative father, with Jessica M., of two children, Molly, born in 2003, and Isaac, born in 2005. Throughout the relationship between Jessica M. and Jones, drug and alcohol abuse and domestic violence took place at the residence in the presence of the children. As a result, the circumstances necessitated the continued involvement of the West Virginia Department of Health and Human Resources and its office of Child Protective Services.

In 2006, the Department of Health and Human Resources instituted abuse and neglect proceedings in the Circuit Court of Ohio County against Jessica M. and Jones on grounds unrelated to the sexual misconduct charges underlying this appeal. One of the primary allegations in the abuse and neglect proceeding was that, while under the influence of an illegal substance, Jessica M. drove away in a vehicle, leaving one of the infant children, age two, on the sidewalk. Soon after, R.M.,

Molly and Isaac were placed in foster care. The record indicates that Jessica M.'s parental rights to R.M. were terminated in November 2007.

At age seven, R.M. entered the foster home of Sally Keefer and was seen exhibiting age-inappropriate sexual knowledge and sexual conduct, such as "French kissing." Soon after, R.M. told Ms. Keefer that she had been sexually abused by Jessica M. and Jones. Following the disclosure, R.M. underwent a number of interviews and counseling and therapy sessions during which she related to social workers, Child Protective Services workers and psychologists various incidents of sexual misconduct perpetrated against her by Jessica M. and Jones.

## II. Procedural Background

In January 2008, an Ohio County grand jury returned separate indictments against Jessica M. and Jones, charging them with committing sexual offenses against R.M.[2] The indictment against Jones set forth six counts of sexual assault in the first degree in violation of *W.Va. Code*, 61-8B-3(a)(2) [1991], and seven counts of sexual abuse by a custodian or parent in violation of *W.Va. Code*, 61-8D-5 [1998]. Those counts charged Jones with a wide variety of acts of sexual misconduct against R.M. over a period of time, when R.M. was age 11 or younger. An additional count charged Jones with conspiracy in violation of *W.Va. Code*, 61-10-31 [1971], alleging that Jones engaged in sexual intercourse or intrusion with R.M., while Jessica M. held R.M. down.

---

[2] Jessica M. was ultimately convicted on eleven counts consisting of sexual assault in the first degree, sexual abuse by a custodian or parent, incest and conspiracy. Her convictions and sentence to an aggregate penitentiary term of 101 to 235 years were affirmed by this Court in *State v. Jessica Jane M.*, *supra*.

3

Following a mistrial in June 2009, Jones's second trial began in December 2009. The evidence submitted by the State was graphic. According to that evidence, Jones had been sexually assaulting or sexually abusing R.M. since she was three or four years old. Some of the incidents occurred when Jessica M. was absent from the residence, and some occurred with Jones committing the act while Jessica M. held R.M. down on the bed. The acts attributed to Jones included vaginal and anal penetration of R.M. with Jones's penis, penetration by Jones of R.M. with his fingers and with a stick, oral sex by Jones upon R.M. and oral sex by R.M. upon Jones. In addition, R.M. witnessed Jessica M. and Jones having sex and was exposed to pornographic movies. The evidence of the State included the testimony of Joan Phillips, M.D., of Women and Children's Hospital in Charleston who examined R.M. and found "blunt force penetrating trauma" to R.M.'s vagina. At the time of the December 2009 trial, R.M., who testified as a witness for the State, was age ten.

Although Jones did not testify, he called a psychologist to the stand who stated that as a result of excessive interviews by social workers, Child Protective Services workers and other psychologists, it could not be determined whether R.M., a young child, was able to accurately report that sexual offenses were committed against her. In addition, Jones called R.M.'s grandmother and aunt who testified that R.M. never disclosed to them any sexual misconduct by Jones. In addition, Jones called Stephen R. Guertin, M.D., who contested the findings of abnormality found by Dr. Phillips.

4

At the conclusion of the trial, the jury found Jones guilty of six counts of sexual assault in the first degree, seven counts of sexual abuse by a custodian or parent and one count of conspiracy. Thereafter, the circuit court entered an order denying Jones's post-trial motions and sentencing him to an aggregate penitentiary term of 161 to 355 years.[3] The circuit court reimposed the sentence by order entered on September 30, 2011.

This appeal followed.

### III. Standard of Review

Although the assignments of error set forth by Jones require the application of separate and distinct standards of review, we note the following general standard in view of Jones's request for a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). *See also*, W.Va. R. Crim. P. 33; syl. pt. 1, *State v. Kennedy*, 229 W.Va. 756, 735 S.E.2d 905 (2012).

---

[3] The 161 to 355 years consisted of the following consecutive sentences: For six counts of sexual assault in the first degree, not less than 15 nor more than 35 years; for seven counts of sexual abuse by a custodian or parent, not less than 10 nor more than 20 years; and for one count of conspiracy, not less than one nor more than five years.

## IV. Discussion

### A.
### Assignment of Error Relating to
### *State v. Quinn* and *Barbe v. McBride*

Jones's first assignment of error is that his confrontation and due process rights were violated because he was not permitted to let the jury know that the complaining witness, R.M., made various statements that sexual misconduct had been perpetrated against her by individuals other than Jones. Jones asserts that evidence of R.M.'s statements implicating others should have been admitted at trial as an exception to West Virginia's rape shield statute, *W.Va. Code*, 61-8B-11 [1986]. That statute provides in relevant part:

> In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible.[4]

(footnote added)

---

[4] In addition to *W.Va. Code*, 61-8B-11 [1986], W.Va. R. Evid. 404(a)(3) [1994], states:

(a) *Character evidence generally.* - Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:   *   *   *

(3) Character of victim of a sexual offense. - In a case charging criminal sexual misconduct, evidence of the victim's past sexual conduct with the defendant as provided for in W.Va. Code § 61-8B-11; and as to the victim's prior sexual conduct with persons other than the defendant, where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice[.]

Prior to trial, Jones filed notices that he intended to introduce evidence before the jury of R.M.'s past statements implicating others. According to Jones, if R.M.'s statements against others were demonstrably false, the statements would fall outside the scope and reach of the rape shield statute under this Court's opinion in *State v. Quinn*, 200 W.Va. 432, 490 S.E.2d 34 (1997), and would suggest that R.M.'s statements implicating Jones were also false. In the alternative, according to Jones, if R.M.'s past statements implicating others were demonstrably true, evidence of the statements would be admissible at trial under *Barbe v. McBride*, 521 F.3d 443 (4th Cir. 2008), and would provide another explanation for the physical findings of Dr. Phillips, as well as R.M.'s age-inappropriate sexual knowledge and conduct.

The circuit court conducted a hearing on December 3, 2009, and in an order entered on December 11, 2009, ruled that R.M.'s past statements implicating others in sexual misconduct against her would not be admissible under either *Quinn* or *Barbe*.[5]

In *Quinn*, the defendant was convicted of sexual misconduct of a child by a custodian. The child was age five. On appeal, the defendant asserted that the trial court committed error in excluding evidence under the rape shield statute of the child's false statements that sexual misconduct had been committed against her by others. In affirming the conviction, however, this Court, in *Quinn*, agreed with the trial court that the defendant's proffer of denials by alleged

---

[5] As stated above, the criminal convictions of R.M.'s mother were affirmed by this Court in *State v. Jessica Jane M.*, *supra*. In that case, a *per curiam* opinion citing *Quinn* and *Barbe*, we held that the trial court did not abuse its discretion in sustaining the State's objection to the following question posed to R.M. by defense counsel: "How many different men did you have sex with?"

perpetrators of the misconduct against the child was insufficient to establish that the child's statements were false.

In so holding, this Court emphasized, in *Quinn*, that requiring "strong and substantial proof" of the actual falsity of an alleged victim's other statements is necessary to reasonably minimize the possibility that evidence which is within the scope of the rape shield statute is not erroneously considered outside its scope. 200 W.Va. at 438, 490 S.E.2d at 40; syl. pt. 2, *State v. Wears*, 222 W.Va. 439, 665 S.E.2d 273 (2008). Accordingly, the defense must initially present such evidence of other statements to the court out of the presence of the jury and with fair notice to the prosecution, which presentation may in the court's discretion "be limited to proffer, affidavit, or other method that properly protects both the rights of the defendant and the alleged victim." *id*. Nevertheless, syllabus point 5 of *Quinn* expressed the following caveat:

> A determination of the probable falsity of other statements of being the victim of sexual misconduct made by an alleged victim of a sexual offense is not a determination of the admissibility of evidence regarding the statements, nor is it a determination that cross-examination on the other statements must be permitted. A falsity determination means only that evidence regarding the other statements is not to be considered as evidence of an alleged victim's "sexual conduct" within the meaning of our rape shield law, *W.Va. Code*, 61-8B-11 [1986] and *West Virginia Rule of Evidence* 404(a)(3) [1994]. The evidence remains subject to all other applicable evidentiary requirements and considerations. Moreover, in the event that an ultimate determination is made that such evidence is admissible, the State retains the right to seek to rebut or impeach such evidence before the ultimate trier of fact.

By contrast, defense counsel in *Barbe* sought to demonstrate that the child had, in fact, been the victim of sexual misconduct by other men in order to provide an alternative explanation for her

8

psychological profile as an abuse victim. In *Barbe*, the defendant was convicted of a number of sexual offenses in a case where the child testified that the defendant had repeatedly abused her when she was between the ages of four and twelve. The defense, however, was prevented by the trial court from cross-examining the State's expert counselor concerning any sexual misconduct perpetrated against the child by other men. The basis of the trial court's ruling was a *per se* application of this State's rape shield law.

Granting relief in habeas corpus, the Fourth Circuit Court of Appeals, in *Barbe*, confirmed that a state court cannot impose a *per se* rule for disallowing evidence under a rape shield law. Instead, the court must determine, on a case-by-case basis, whether the exclusionary rule is arbitrary or disproportionate to the State's legitimate interests. Concluding that the defendant's right to confront witnesses had been violated, the opinion in *Barbe* states:

> In making the Rape Shield Ruling at trial, the state court contravened the *Rock-Lucas* [case-by-case assessment] Principle. That is, the circuit court applied a per se exclusionary rule, premised on its conclusion that, because Barbe was not relying on the falsity exception to the rape shield law recognized in *State v. Quinn*, "the rape shield statute applies, period." As the Supreme Court explained in *Lucas*, a court's adoption and application of a per se exclusionary rule - absent consideration of the specific facts of the case, and absent an appropriate assessment of the legitimate competing interests of the accused and the State - constitutes error.

521 F.3d at 458.

Consistent with the *Barbe* opinion's proportionality of interests analysis, and its case-by-case assessment principle, is syllabus point 6 of *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999), which holds:

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under the test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

*See State v. Jessica Jane M.*, *supra*, 226 W.Va. at 254 n. 16, 700 S.E.2d at 314 n. 16 (associating syl. pt. 6 of *Guthrie* with *Barbe*).

In Jones's November 2009 pre-trial notice, he set forth ten paragraphs describing evidence he intended to introduce at trial under either the *Quinn* or *Barbe* opinions. Paragraph one alleged that, in March 2003, R.M. falsely reported inappropriate sexual contact by her uncle and grandfather. In March 2003, R.M. was age four. However, paragraph one referenced a March 6, 2003, memorandum from the Ohio County Sheriff's Office which stated that, according to Jessica M., the incidents occurred in March or April 2002. At that time, R.M. would have been age three. Moreover, paragraph one stated that R.M. made the report "because she was confused by her mother." In paragraph two of the notice, R.M. falsely implicated foster mother Sally Keefer and her husband in inappropriate sexual contact. That paragraph, however, stated that R.M. said there was contact "or" that she dreamed that Sally Keefer and her husband involved her in inappropriate

sexual contact. Paragraph three alleged that R.M. had been having dreams, fantasies and nightmares about her foster parents having sex. Paragraph three also alleged that R.M. falsely reported seeing Sally Keefer's husband in his underwear.

Paragraph four alleged that R.M. reported that her cousin, Sasha, had inserted a hair brush into R.M.'s vagina. Paragraph four referenced a July 18, 2001, medical report which found "no obvious evidence of genital trauma." In July 2001, R.M. was age two. Paragraph five alleged that R.M. falsely reported that she was sexually abused by a man named Graham. R.M.'s report concerning Graham will be discussed in detail in the section of this opinion designated Remaining Assignments of Error.

Jones withdrew paragraphs six and seven of the pre-trial notice. Paragraph eight alleged: "The child has reported that she saw her former foster sibling 'Wesley' naked. The child later denied that she saw Wesley naked or that she made the report." Paragraph nine alleged that, R.M. reported seeing David Burech naked and that he had intercourse with her. According to that paragraph, R.M. implicated an additional individual named "William." That paragraph further alleged that R.M. also denied that Burech did anything to her, except spanking her. Finally, paragraph ten alleged: "R.M. has reported that she has had sex with her cousin [C.V.] and was caught in the act."

In the order of December 11, 2009, the circuit court ruled that the above evidence would not be admitted at trial. With regard to Jones's assertion that R.M.'s reports would be admissible under *Quinn*, the order stated:

11

Defendant has not made the requisite showing of "strong or substantial proof" that the statements Defendant intends to introduce regarding the alleged victim's past sexual abuse at the hands of persons other than Defendant, are false[.] * * * Notably, an evidentiary hearing on this matter was initially scheduled for December 3, 2009 at 9:00 am, but was adjourned until 2:00 pm because Defendant was unable to locate the necessary witnesses. At the reconvened hearing at 2:00 pm, Defendant again appeared without any witnesses to present in support of his position. * * * Unsubstantiated documents, without more, are not enough to make the requisite showing that the alleged victim's previous statements about sexual abuse allegedly suffered at the hands of persons other than Defendant, are false so as to remove those statements from the confines of West Virginia's Rape Shield Law.

As to Jones's assertion that certain reports concerning R.M.'s allegations against others would be admissible under *Barbe*, the circuit court found the truth of the allegations to be speculative. Thus, the order stated that the circuit court had been unable "to meaningfully balance the interests of the alleged victim in keeping such allegations/occurrences private, with the Defendant's interest in presenting a defense to the serious charges entered against him."

The appendix-record reveals that, notwithstanding the sexual offenses, R.M. and her siblings were the victims of abuse and neglect throughout their young lives, which included exposure to the conduct of Jessica M. and Jones in the form of drug and alcohol abuse and domestic violence. Some of the reports sought to be admitted under *Quinn* or *Barbe* took place when R.M. was age four, or less. Other reports were largely accounts of R.M.'s symptomatology, or seeing someone without clothing, rather than instances of statements of sexual misconduct by others. A child's dreams, fantasies and nightmares, while important to the counselor or psychologist, do not, of themselves, warrant dissection at trial under the authority of the *Quinn* and *Barbe* decisions. As confirmed in

12

*Quinn*, the Constitution of the United States "does not require confrontation of witnesses with irrelevant evidence." 200 W.Va. at 440 n. 13, 490 S.E.2d at 42 n. 13. Moreover, as recognized in *Barbe*, "a state's interest in protecting sexual abuse victims from harassment, humiliation, and invasion of privacy is especially compelling when the testifying victim is a child." 521 F.3d at 459 n. 21.

We recognize, however, the possibility that some of the evidence Jones sought to introduce could have been elicited at trial from witnesses other than R.M. Moreover, Jones relies heavily on the allegation in paragraph nine that R.M. reported David Burech as having had intercourse with her. R.M. also denied that Burech did anything to her, except spanking her. Nevertheless, if the report implicating Burech were false and, thus, not covered by the rape shield statute, syllabus point 5 of *Quinn* makes clear that the report's falsity is not a determination of automatic admissibility at trial. If the report implicating Burech were true, then the proportionality and case-by-case assessment principles of *Barbe* must come into play. In the current matter, the circuit court was unable to complete the process, under *Barbe*, because it found Jones's evidence to be speculative.

Given the age and history of this child, and the specificity of her statements relating to Jones, this Court is of the opinion that the exclusion of Jones's evidence concerning R.M.'s reports and statements of sexual misconduct committed against her by others was within the court's discretion. This assignment of error is, therefore, without merit.

**B.**

13

**Remaining Assignments of Error**

Related to the above assignment of error is Jones's assertion that the State violated his right to discovery of exculpatory evidence by failing to provide the identity of the author of a September 14, 2009, report prepared by the Department of Health and Human Resources.[6] According to the report, R.M. made a statement indicating that a man named Graham improperly touched her during an overnight visit in the Graham home. The report concluded, however, that the accusation was false on the basis that R.M. admittedly made the statement because she missed her foster mother and wanted to leave the Graham residence. Except for a reference indicating that Sally Keefer had informed Mrs. Graham that R.M. had implicated other individuals in acts of sexual misconduct in the past, the September 14, 2009, report dealt entirely with the accusation against Mr. Graham. The State provided a copy of the report to Jones on September 15, 2009, prior to his second trial.

The circuit court addressed the report during the December 3, 2009, hearing and in the pre-trial order entered on December 11, 2009. The circuit court concluded that, as an exception to its ruling of inadmissibility under *Quinn*, the false accusation against Mr. Graham would be admissible in Jones's case-in-chief. Noting the State's acknowledgment that the accusation was false, the

---

[6] Immediately after the return of the indictment, Jones filed an omnibus discovery motion pursuant to Rule 16 of the *West Virginia Rules of Criminal Procedure* which incorporated a demand for exculpatory material. Jones's efforts to obtain discovery were on-going throughout the case and included a request for psychological, medical, school and counseling records pertaining to R.M. Jones also sought to require the State "to make inquiry of any and all relevant agencies, entities or persons with respect to the existence of material relevant to the charges herein." In July 2008, the circuit court ordered the State to issue a subpoena *duces tecum* upon the Department of Health and Human Resources to secure the production of certain material. In response to the various requests, the State provided thousands of pages of discovery to Jones.

14

December 11, 2009, order stated that R.M.'s assertion against Mr. Graham "is outside of the scope of the Rape Shield Law and is therefore not precluded under WV Code § 61-8B-11."

However, after ruling the Graham evidence admissible under *Quinn*, R.M. recanted her denial and restated that Mr. Graham had, in fact, improperly touched her. As a result, the circuit court revisited its ruling in an *in camera* hearing conducted during Jones's December 2009 trial. In the *in camera* hearing, the court spoke with R.M. and a child witness who had been present in the room in the Graham residence when the incident allegedly occurred. The two children gave opposite accounts of whether any improper touching of R.M. took place. Concluding that it was impossible to tell whether the incident did or did not occur, the circuit court reversed its earlier ruling and held the Graham evidence inadmissible at trial.

It was during the December 2009 *in camera* hearing that the State provided Jones with the identity of the author of the September 14, 2009, report, *i.e.*, Lori Glover. At that time, the State represented that Ms. Glover was available by telephone.

Jones contends that the failure of the State to timely identify Ms. Glover as the author of the report unfairly deprived him of the ability to call Ms. Glover as a witness at the December 3, 2009, hearing and at trial. Jones maintains that he was, therefore, precluded him pursuing evidence of false accusations, under *Quinn*, with which to impeach R.M.'s testimony.

15

Syllabus point 2 of *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994),

holds:

> The traditional appellate standard for determining prejudice for discovery
> violations under Rule 16 of the West Virginia Rules of Criminal Procedure
> involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant
> on a material fact, and (2) did it hamper the preparation and presentation of the
> defendant's case.

Syl. pt. 2, *State v. Smith*, 220 W.Va. 565, 648 S.E.2d 71 (2007). *See also* syl. pt. 2, *State v.*

*Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).

In this matter, several factors mitigate against a conclusion that reversible error occurred

because of the failure to identify Ms. Glover. Though untimely, Ms. Glover was identified during

the trial and was represented to be available by telephone. Moreover, according to the September

14, 2009, report, Sally Keefer and Mrs. Graham were the true sources of comments to the effect that

R.M. had a history of making false accusations against other individuals. Jones received a copy of

the report on September 15, 2009, well in advance of his December 2009 trial. Finally, as to the

specific accusation against Mr. Graham, the ultimate conclusion of the circuit court was that

admissibility under *Quinn* was not shown because it was impossible to determine whether the

accusation was true or false. Consequently, this assignment of error does not warrant the granting

of a new trial.

16

Jones next contends that the circuit court committed error in denying his motion for a mistrial when the State's expert witness, Maureen Runyon, testified that, in her opinion, Jones had sexually abused R.M.

During the trial, the State called Maureen Runyon, an expert in the field of social work employed at Women and Children's Hospital in Charleston, who testified about an interview she conducted with R.M. in 2006. During the interview, R.M., age seven, denied that anyone had engaged in sexual misconduct against her. However, according to Runyon, R.M. also stated that, if anyone were to give her sexual touches, she "could tell my mammaw and she would call the cops on Jack." R.M. further said during the interview that she loved Jones and that Jones would buy her gifts and candy. Runyon then testified:

> Q. * * * [T]he fact that [Jones] would buy [R.M.] candy and do these nice things to her, did you bring – come to any conclusion about whether or not she was being perpetrated on?
>
> A. One of the things that I always say is that we have to look at children and allegations in cases in totality, and when I do that now and I – then, yes, I am of the opinion that [R.M.] was sexually abused by Jack Jones.

At that point, Jones's counsel moved for a mistrial on the grounds that Runyon's expression of opinion was highly prejudicial and invaded the province of the jury. The motion was denied, and Jones's counsel was permitted to draft a curative instruction. That instruction, given to the jury during Runyon's testimony, stated:

> The Court instructs the jury that the testimony of Maureen Runyon in which she expressed an opinion that Jack Jones sexually abused [R.M.] was

17

completely inappropriate and is not a proper opinion within the area of her expertise. No witness is permitted to express a belief or an opinion that a defendant committed any charged offense. The determination of guilt or innocence is solely a matter to be decided upon by the jury. The jury is instructed that the Court has stricken the matter from the record and that the jury may draw no inference from that testimony and may not consider that testimony in any way in arriving at a conclusion of guilt or innocence. As a matter of law that testimony does not exist.

Moreover, the instructions given to the jury at the end of the trial included the following: "You should disregard, entirely, questions and exhibits to which an objection was sustained or answers and exhibits ordered stricken out of the evidence."

There is no question that Ms. Runyon's comment that Jones sexually abused R.M. was improper. *See* syl. pt. 7, in part, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) (Although an expert may offer an opinion based on objective findings that a child has been sexually abused, the expert may not state whether he or she personally believes the child, nor may the expert give an opinion as to whether the sexual misconduct was committed by the defendant.). *See also* syl. pt. 3, *State v. Martin*, 224 W.Va. 577, 687 S.E.2d 360 (2009). Nevertheless, Rule 26.3 of the *West Virginia Rules of Criminal Procedure* states: "Before ordering a mistrial, the court shall provide an opportunity for the state and for each defendant to comment on the propriety of the order, including whether each party consents or objects to a mistrial, and to suggest any alternatives." In this case, the trial transcript demonstrates that Jones's counsel, the prosecutor and the court engaged in an extended discussion concerning whether a mistrial should be declared. Concluding that a mistrial

18

was not warranted, the circuit court gave the curative instruction drafted by defense counsel. As can be seen, the instruction was detailed and manifestly clear.

This Court held in syllabus point 18 of *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966): "Ordinarily, where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." *See also Reed v. Wimmer*, 195 W.Va. 199, 208, 465 S.E.2d 199, 208 (1995) (There is a presumption that curative instructions are effective.). Here, Runyon's improper comment did not relate to any specific count of the 14 count indictment under consideration by the jury. Given the volume of evidence placed before the jury over several days of trial and the text of the curative instruction given, this Court is of the opinion that the circuit court's denial of Jones's motion for a mistrial is protected by the parameters of sound discretion. *See* syl. pt. 8, *State v. Davis*, 182 W.Va. 482, 388 S.E.2d 508 (1989) ("The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court."). *State v. Thornton*, 228 W.Va. 449, 459, 720 S.E.2d 572, 582 (2011) (The grant or denial of a motion for a mistrial is reviewed under an abuse of discretion standard.).

Finally, Jones assigns as error the denial of his post-trial motions concerning certain comments made by the State to the jury during closing argument. Those statements were to the effect that the State had presented "an honest case with honest witnesses" and that the State had not attempted any "shading or spinning" of the facts. A review of the transcript, however, suggests that those comments were neutralized by the State's admonition, also made during closing, that "no one

19

is entitled to their own facts." We cannot conclude that the circuit court abused its discretion in denying Jones's post-trial motions in that regard. Syllabus point 3 of *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927), holds:

> The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom.

Syl. pt. 3, *State v. Graham*, 208 W.Va. 463, 541 S.E.2d 341 (2000).

## V. Conclusion

Having found the assignments of error to be without merit, this Court affirms Jones's criminal convictions as well as his penitentiary sentence set forth in the September 30, 2011, order of the Circuit Court of Ohio County.

**Affirmed**.