No. 14-0455 - *State of West Virginia v. Steven Williams*

Workman, Chief Justice, concurring:

Although I agree with the majority's ultimate decision to affirm the defendant's conviction, I write separately to express my belief that the circuit court's decision to prevent cross-examination of State witness Ms. Victoria Combs on the issue of her probationary status at the time she provided a statement to the West Virginia State Police was an abuse of discretion. In my opinion, this issue warranted evaluation by the majority, despite the fact that the error might properly have been found to be harmless in light of the other evidence against the defendant.[1] This witness, Ms. Combs had been placed on probation for two years under a deferred adjudication, and that probationary period was subsequently reduced to only twelve months. That reduction in her probationary period and dismissal of her criminal conviction[2] was accomplished approximately *six months after* she provided her statement to

---

[1] I also believe that any effort to analyze this issue under Rule 609 of the West Virginia Rules of Evidence was misguided from its initiation. There is absolutely no question, based upon the rule itself and the precedent of this Court, that Rule 609 had no application to this case. It applies in the very narrow instance of a criminal conviction of a witness in question, a circumstance which was not present here. Thus, to engage in an evaluation of whether evidence of Ms. Combs' legal history could be introduced under Rule 609 was fruitless and misleading.

[2] Upon her plea of guilty to a felony conspiracy charge, Ms. Combs was placed on probation for two years under a deferred adjudication, with the understanding that if she

1

the police about the defendant in this case. Moreover, the police officer who assisted with the investigation into the shooting at McDonald's was the same police officer who arrested Ms. Combs in her underlying criminal charge.

While I applaud the circuit court's thoroughness in conducting an *in camera* hearing to evaluate the issue of a potential connection between her cooperation with the police and her reduction in time of probation, I believe the court's ultimate conclusion was flawed. A credibility issue as significant as the motivation of a key witness to provide a statement against a defendant deserves to be evaluated by the jury, even if the trial court is not convinced of any undue pressure placed upon that witness to cooperate with the police.[3]

This Court has very appropriately and consistently held that the right of a defendant to cross-examination of witnesses is sacred. This Court has also emphatically explained that "[a] defendant on trial has the right to be accorded a full and fair opportunity to fully examine and cross-examine the witnesses." Syl. Pt. 1, *State v. Crockett*, 164 W.Va.

---

successfully completed probation, she would be permitted to withdraw her guilty plea.

[3]It is axiomatic that the prosecution in this matter would have been required to disclose any inducements provided to Ms. Combs in exchange for her statement or testimony. *See* Syl. Pt. 2, *State v. James*, 186 W.Va. 173, 411 S.E.2d 692 (1991) (explaining that "[t]he prosecution must disclose any and all inducements given to its witnesses in exchange for their testimony at the defendant's trial."). This Court reasoned that "[s]uch deals are crucial as impeachment evidence; in some cases the jury may decide that the deal has created an incentive for the witness to lie." *Id*. at 175, 411 S.E.2d at 694.

435, 265 S.E.2d 268 (1979).

> Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is co-extensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the *interest and bias of the witness*, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syl. Pt. 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982) (emphasis added).

As this Court aptly noted in *State v. Barnett*, 226 W.Va. 422, 701 S.E.2d 460 (2010), a "trial court's decision must be balanced with the substantive rights of the appellants." *Id*. at 430, 701 S.E.2d at 468. Justice Cleckley observed that in striking this delicate balance, "[l]atitude normally is permitted in cross-examining the State's witnesses, and limitation of such cross-examination may only be based upon sound reasons justifying a departure from the norm." *State v. Blake,* 197 W.Va. 700, 709, 478 S.E.2d 550, 559 (1996).

The United States Supreme Court emphasized the relevance of the partiality of a witness, astutely observing as follows in *Davis v. Alaska*, 415 U.S. 308 (1974): "The partiality of a witness is subject to exploration at trial, *and is always relevant* as discrediting the witness and affecting the weight of his testimony." *Id.* at 316 (emphasis added). In

*Pointer v. Texas*, 380 U.S. 400 (1965), the Court explained that "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which if the country's constitutional goal." *Id.* at 405. Similarly, Justice Davis clearly articulated the critical importance of wide latitude in cross-examination in her dissenting opinion in *State v. Jones*, 230 W.Va. 692, 742 S.E.2d 108 (2013), and examined the "problem of denying a defendant the right to cross-examine a key witness with relevant evidence that attacks the witness' credibility." *Id*. at 705, 742 S.E.2d at 121 (Davis, J., dissenting).

Essential to an accurate analysis of the present case is the recognition that evidence of a specific promise of leniency or inducement to provide a statement is not a prerequisite to allowing cross-examination on the issue of witness motivation. As the Supreme Court of Georgia indicated in *Hines v. State*, 290 S.E.2d 911 (Ga. 1982), in examining witness motivation and the possibility of a deal with law enforcement, "[w]hether or not such a deal existed is not crucial." *Id*. at 914 (internal citations omitted). "What counts is whether the witness may be shading his testimony in an effort to please the prosecution." *Id*. This "desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." *Id.* (internal citations omitted).

4

Similarly, in *Braund v. State*, 12 P.3d 187 (Alaska Ct. App. 2000), the trial court had ruled that the defendant could not cross-examine a prosecution witness on the issue of "her favorable treatment unless he had some independent evidence that the District Attorney's Office formally gave [the witnsss] favorable treatment in exchange for her testimony[.]" *Id*. at 190. The trial court had advised the defendant's counsel to "[c]ome back [if] you have . . . a good-faith basis for asking that question[.]" *Id*. On appeal, the appellate court reversed, noting that the trial court "was willing to let [the defendant] question [the witness] about the favorable resolution of the crack cocaine charge only if the State conceded that the dismissal of that charge had been the *quid pro quo* for [the witness'] testimony against [the defendant]. This was error." *Id.* at 191. The court in *Braund* elaborated:

> The State dismissed a felony charge against [the witness] just before she was to testify against [the defendant]. This *sequence of events*, in itself, raised an inference of favoritism. [The defendant] was entitled to present the facts and ask the jury to draw the inference. If the State wished to prove that the District Attorney's Office was simply following established policy and that no favoritism was involved, the State was free to present witnesses on this issue. But it was error to prohibit [the defendant] from cross-examining [the witness] on this issue unless the government explicitly conceded the existence of the deal that [the defendant] was trying to prove.

*Id.* (emphasis added). The court also recognized that "the test is the witness' expectation or hope of a reward, not the actuality of a promise by the State." *Id*. (internal citations omitted).

> Even if there was no formal agreement between [the witness] and the State, [she] might have subjectively believed that her

5

willingness to testify against [the witness] was the reason the State chose to dismiss her possession-of-cocaine charge. Conceivably, [she] might also have believed that the felony charge could be revived if she did not continue to cooperate. [The defendant] should have been allowed to cross-examine [the witness] concerning these potential grounds of bias.

*Id.*

Addressing a refusal to permit cross-examination of a witness in *Standifer v. State*, 718 N.E.2d 1107 (Ind. 1999), the Supreme Court of Indiana observed that the trial court had improperly disallowed witness cross-examination regarding "the amount of time remaining on a sentence he had served . . . ." *Id.* at 1110. The witness was on parole at the time of the defendant's trial, and the defendant "argued that the amount of time remaining on [the witness'] sentence was a motivating factor in his cooperation with the State that would affect the jury's assessment of his credibility." *Id.* The court found that "[a]lthough there was no evidence of a deal between the State and [the witness] based on his cooperation, [the defendant] is correct that the extent of a benefit offered to a witness is relevant to the jury's determination of the weight and credibility of a witness' testimony." *Id.*

Similarly, even in the absence of any *formal* offer of favorable disposition, the Supreme Court of Colorado held that it was error to prevent cross-examination of a witness with regard to a recent charge for criminal trespass and any expectation the witness may have had concerning a forthcoming favorable disposition. *Kinney v. People*, 187 P.3d 548, 559

6

(Colo. 2008). The reviewing court in *Kinney* held:

> ]T]he court of appeals seems to have concluded that defense counsel failed to show a nexus between the pending charge and an influence on [the witness'] testimony against [the defendant] because the prosecution claimed that it had not promised [the witness] a favorable disposition of her pending misdemeanor case in exchange for testifying.

*Id*. at 560. The court reversed that decision, holding that precedent clearly "only requires that the defendant show that the witness's testimony *might be influenced* by a promise for, or hope or expectation of, immunity or leniency with respect to the pending charges against [the witness]." *Id*. at 560 (internal citations omitted).

> Put another way, the court of appeals erred when it required the defendant show *with certainty, rather than merely show the possibility*, that the witness's testimony was being influenced by a promise for, or even only mere hope or expectation of, leniency with the pending charge in exchange for favorable testimony against the defendant.

*Id.* (emphasis added). The court in *Kinney* emphasized that courts have not demanded a "level of certainty in the nexus between the pending case and the witness's testimony." *Id.* at 561.

> Even when there has not been an explicit promise of leniency made by the prosecution, an offer of proof or testimony by the witness articulating an expectation for leniency has not been required. Rather, reviewing courts have examined whether the particular facts of the case show that the witness's testimony might have been influenced by a promise for, or simply a hope or expectation of, leniency in exchange for favorable testimony.
> . . .

*Id*.; *see also Delaware v. Van Arsdall*, 475 U.S. 673 (1986) (finding error in ruling

7

prohibiting defendant's inquiry into possibility of witness bias as result of state's dismissal of pending public drunkenness charge).

In the case sub judice, despite the fact that the only evidence on the impartiality issue was presented by the State and did not indicate overt pressure or bias, I believe the defendant should have been afforded the right to cross-examine Ms. Combs regarding her probationary status and the possibility of undue influence. The potential connection between her statement to police about this defendant and the leniency she later received on her probationary status should have been a question of credibility for the jury, rather than the trial court. This woman was originally placed on probation for twenty-four months, and that period was reduced to only twelve months after she provided her statement to the police. Rather than permitting the defendant a certain degree of latitude to present these circumstances to the jury, the trial court circumvented any jury evaluation and used the mechanism of an in camera hearing to make its own determination of whether the facts warranted presentation to the jury. As examined above, courts have recognized that even the subconscious expectations of a witness may influence his or her statement to the police. While we do not question Ms. Combs' truthfulness or suggest that she cooperated with police to curry personal gain or to seek the favor of law enforcement in order to obtain a benefit in her own legal tribulations, those issues should have been explored by the jury in this case. I believe that the weakness in the majority's opinion is its apparent endorsement of the

concept that this credibility determination could be made by the trial court when, in my opinion, it should have been solely within the province of the jury. As the United States Supreme Court articulated in *Van Arsdall*, "[a] reasonable jury might have received a significantly different impression" of Ms. Combs' credibility had defense "counsel been permitted to pursue his proposed line of cross-examination." *Id.* at 680.

I therefore respectfully concur.